**Julian E. ROSS and Gertrude A. Ross, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 15509.

United States Court of Appeals Fifth Circuit.

Nov. 18, 1955.

Julian E. Ross, Fort Lauderdale Fla., Robert C. Claiborne, Miami, Fla., Julian L. Williams, Fort Lauderdale, Fla., for petitioners.

Carolyn R. Just, Atty. Dept. of Justice, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., R. P. Hertzog, Acting Chief Counsel, Int. Rev. Service, Charles E. Lowery, Sp. Atty., Grant W. Wiprud, Atty. Dept. of Justice, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

█ The problem here is whether profits accruing to petitioners during the years 1948 and 1949 from the sale of certain lands should be taxed as ordinary income or as income derived from the sale of capital assets within the meaning of Section 117(a) and (j) of the Internal Revenue Code of 1939, 26 U.S.C.A. 1946 Ed.[1] Its resolution will depend on whether the lands were held primarily for sale to customers of petitioners in the ordinary course of their trade or business. The Tax Court, in an unreported opinion, held that the lands were so held and hence were excluded from the definition of "capital assets". The case is before us for review and the decision of the Tax Court will have to be affirmed unless its finding was clearly erroneous.

Petitioners are husband and wife, but the wife's participation in the activities on which the decision was based was in name only and she is a party only because the two made joint returns. The husband is, and has been since 1926, a lawyer engaged in the practice of his

1. "§ 117. Capital gains and losses
  "(a) *Definitions.* As used in this chapter—
    "(1) Capital Assets.—The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * *."

profession at Fort Lauderdale, Florida. Since his activities alone are involved, he will be referred to as the taxpayer or petitioner hereafter in this opinion.

Certain items which the Tax Court had before it have been eliminated from the case and they will be mentioned here. The first is an item of $1,046.74 derived by the taxpayer from a partnership known as Flova Trust and which he had reported as long term capital gain; a net amount of $4,286.34 had been similarly handled during the year 1949 and from the same source; and in 1948 an item of $222.04 was derived by the taxpayer from the Devon Trust. The Tax Court held that these items should not have been reported and handled as long term capital gains, but should have been treated as ordinary income. In the oral argument before us petitioner agreed to acquiesce in this holding and those features of the review are now eliminated from our consideration.

There remains before us for decision the matter of the income derived by petitioner from the sale of thirty-seven vacant lots constituting twenty-four transactions in 1948, and one hundred ninety-eight lots constituting fourteen transactions in 1949, all held by the petitioner for more than six months.[2] One hundred twenty-three of these lots came to petitioner February 4, 1948 from a liquidation of the assets of said Flova trust and represented a distribution of property already owned in part by petitioner. The remaining lots had been purchased by the petitioner in or before the year 1945 for the construction of rental houses. These lots were acquired for the purpose of constructing houses for rental to Negroes and they lay in far outlying areas which were set apart by the ordinances of Fort Lauderdale for exclusive occupancy by Negro houses. When these zoning ordinances were de-clared invalid, property closer to the center of the city was made available for the construction of these housing units and petitioner was left owning the outlying lots thus rendered unsuitable for the use for which they were acquired, and with the problem of disposing of them.

By 1949 petitioner had constructed forty-eight rental units on portions of the property so held and before the time of trial this number had been increased to eighty. Petitioner testified categorically that each and every lot sold by him during the two years involved had come either from the Flova distribution or from that portion of the land purchased for the erection of rental units which had been rendered unsuitable for that original purpose; and that none of the lots were purchased or held at any time for resale except by way of liquidation of a capital asset.

The Commissioner put on no witnesses and his efforts at challenging this testimony consisted of the cross-examination of petitioner and the introduction of a number of conveyances to and from petitioner over a decade prior to and including the years in question. The purpose of these efforts was to demonstrate that the petitioner had for a number of years been actively engaged in the real estate business.

It was established that petitioner was a member of several partnership ventures with certain of his clients and friends; one, which did business under the name of Flova Trust, was active in business from 1944 until its liquidation in February, 1948; another was the Tanger Trust, which was active during the years 1943 to 1945; and a third was known as the Devon Trust, whose activities extended from 1944 to February, 1948.

2. The deficiencies which the Tax Court sustained amounted to $1,214.58 with interest of $426.26 for 1948 and $4,703.90 with interest of $1,368.24 for 1949. Payment of these items was made by petitioner January 20, 1955. These and the claimed overpayment of $400.92 for 1948 and the item of $191.46 which petitioner claims was wrongfully disallowed are involved in the redetermination hereinafter ordered.

Each of these partnerships, functioning largely through the other partners, engaged in various kinds of real estate activities during the periods respectively mentioned, including the purchase and sale of real estate. Petitioner's activities in those businesses were primarily devoted to performance of legal services connected with the purchase and sale of property and quieting title through legal proceedings although he was active to some extent in the actual sales of lots owned by the partnerships. These activities on the part of petitioner, plus the volume and frequency of sales of lots made by him in the two tax years involved constituted the circumstances relied upon by the Commissioner as establishing a conflict with the testimony given by him, which, the Commissioner contends, was sufficient to sustain the findings of the tax court.

Petitioner claims, on the other hand, and established by testimony undisputed except as the foregoing circumstances may bring about a dispute, that he had been an active lawyer since 1926, giving his entire time to his profession and holding a number of public offices including municipal judge and city attorney for Fort Lauderdale, Florida. He admitted that he had dabbled to some extent in real estate over the period of time mentioned, but stated that he functioned chiefly in a legal capacity; and he testified further and without dispute that the lots sold by him during 1948 and 1949 represented an asset which had come to him either through the distribution mentioned or had been purchased and held for use in constructing rental units; and that the sales were an orderly liquidation of this property.

In our view, the position of petitioner is sound and that of the Commissioner was and is clearly erroneous because it is based on an error of law or a failure to apply settled legal principles to the undisputed facts before the Tax Court.

In our opinion, every issue in the case is resolved in favor of petitioner by four decisions of this court,[3] two of which have been rendered since the case was decided below.

In the Foran case we discussed the value which should be ascribed to the testimony of the taxpayer where it is not successfully challenged by direct or circumstantial evidence. What we said there is applicable to what we are called upon to decide here. Foran was a broker of oil and gas royalties and he had, over a term of years, purchased and sold some gas and oil properties in his own name. The property there in question was acquired by him in the normal course of business and, after gas production had been obtained on it, he decided to hold it as an income-producing investment. After he had held it thus for eighteen months, the major oil companies controlling the field began active steps to bring about a reduction in the allowable production in the area to such an extent as greatly to curtail his income from it. When the situation thus changed he decided to sell the property and did sell it.

These facts were all established by his testimony, and the Tax Court seemed disposed to accept what he said except his statement that the property was held during the eighteen-month period solely as a source of income and therefore as a capital investment. The Tax Court thought that Foran's sudden change of purpose with respect to this property, added to his admitted vocation as a real estate dealer in oil and gas properties, was sufficient to challenge successfully his testimony otherwise undisputed. We reversed the Tax Court's decision, using in part this language:

"Here there is direct and positive evidence from the witness who best knows, that this property was for eighteen months being held as an investment and not held for sale to

---

**3.** Fahs v. Crawford, 5 Cir., 1947, 161 F.2d 315; Foran v. Commissioner, 5 Cir., 1948, 165 F.2d 705; Goldberg v. Commissioner, 5 Cir., 1955, 223 F.2d 709, and Smith v. Dunn, 5 Cir., 1955, 224 F. 2d 353. .

customers. His testimony is consistent with every proven fact. He gives a credible reason why it was not for sale and why finally in 1941 he did sell it. We think the Court's refusal to follow the sworn testimony is contrary to law, and requires the setting aside of its fact-finding as it would that of a jury * * *. We recognize that intent may be proved by circumstances, and that a party's testimony as to his intent may be rebutted by proof of circumstances which are inconsistent therewith. We hold that no circumstance found by the Tax Court here is inconsistent with the reasonable and uncontradicted testimony of Foran."

■ We hold the same thing here. The ultimate fact for decision related solely to the lots sold by petitioner during 1948 and 1949. He testified categorically that these lots were held by him as an investment, and he gave a plausible explanation of his ownership of them and why he decided to sell them. According to his testimony every sale made during this two-year period was made in the process of liquidation of a property held by him as a capital asset. Although his activities in other years and his intentions with respect to other pieces of property were competent evidence to be considered as a circumstance, the evidence in this record was not sufficient to warrant a rejection by the Tax Court of the positive testimony of petitioner.

This impeaching testimony was not as strong as that before the Tax Court in the Goldberg case supra. The corporation there involved, for whose taxes Goldberg et al. were liable as transferees, was the owner of more than one hundred houses. It sold ninety of those houses in the year in question. Goldberg was a real estate agent with twenty-six years active experience, and he was vice-president of the corporation. Based largely on the vocation of Goldberg, the traditional business of the corporation, and the volume of sales in the tax year

involved, the Tax Court rejected Goldberg's claim that the income from the sales of these ninety houses should be treated as long term capital gain. Because the evidence showed without question that the property was originally acquired for rental purposes and the objective evidence of change in that purpose was not sufficient to warrant a rejection of the positive evidence, we reversed. In analyzing the evidence there before the Tax Court we laid down general principles which should govern the fact-finder in evaluating evidence of this character. Those principles require a reversal here just as they did in the Goldberg case.

The argument of the Commissioner with respect to the volume and frequency of sales here is also answered by the Goldberg case [223 F.2d 713]. The Commissioner there leaned heavily upon the fact that more than eighty percent of the houses owned by the taxpayer were sold in one year at a profit of more than $58,000.00. The answer we gave there was that the corporation had a lot of houses to sell: "The sales were frequent and continuous; but since the circumstances were favorable to selling to individuals and the project was a large one, this is entirely consistent with liquidation of it as an investment * * *. There was absolutely no evidence of any promotional activity or that petitioners used the proceeds to buy and sell other houses. * * *"

Moreover, analysis of the facts in the case before us reveals that the frequency of the sales was more apparent than real. The Commissioner points out that, in 1948, petitioner sold thirty-seven lots. The evidence showed that most of these lots were twenty-five foot lots, and that the transactions were only twenty-four in number, an average of two a month. It showed that the only activity performed by petitioner was to certify the title and draw and execute the conveyances, all activities belonging primarily to his profession as a lawyer. The Commissioner makes much of the fact that one hundred ninety-eight lots were sold in

1949. When broken down and explained it appears that thirty-eight of these lots were taken by the city under eminent domain proceedings, that ninety-eight lots were handled in one transaction, forty-two lots in another, and that there were only fourteen separate transactions in all.[4]

In the Smith case, supra,[5] as well as the Goldberg case, we sought to define with some precision the ingredients which go to make up the rounded test to which such evidence must be subjected. The Commissioner's proof here related to two of those only: the activities of petitioner in prior years, upon the postulate presumably that these raised a presumption against him under some such theory as "guilt by association" or contamination of his activities in the years in question and with respect to this particular property by what he had been doing in former years; and the frequency and continuity of sales. This proof was not sufficient to make an issue with the clear and positive testimony of petitioner as to the character and quality of his holding of this property.

Petitioner, on the other hand, offered proof of a convincing character relating to the other constituents of the tests enumerated in the Goldberg and Smith cases. The nature, character and duration of his title, his active pursuit of the practice of law, the complete absence of "busyness" on his part in connection with the sale of these lots beyond the execution of one or two conveyances a month; the undisputed proof that no improvements were made on the property to make it salable, that no listings were made with real estate dealers, that no advertising was done and that no sort of effort was made to induce purchasers to buy, all point to the liquidation of a residuary capital asset by a man who, at most, had attempted to put his savings to work by investment in rental property while following his profession in a normal way.

It is apparent that the Tax Court did not subject the facts to these phases of the tests laid down, and that it failed to evaluate properly the effect of the evidence as it related to those elements of the tests on which the Commissioner centered his proof.

In considering whether profits from the sale of the lots here involved were entitled to be treated as capital gain, it is well, as it is in all other cases, to keep constantly in view the language of the statutory exclusion under which the Commissioner and the Tax Court ruled against petitioners: "* * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." It is difficult to perceive how this plain language can be held to embrace property held and disposed of under the facts and circumstances reflected by this record. Especially is this true when these facts are subjected to the tests laid down by this court in the cases discussed where we have defined and clarified that language and provided simple and understandable standards of decision in cases such as this one. The Tax Court has failed to apply that language or those standards to the facts of this case and, so failing, it has erred. Its judgment is

4. These large sales were arranged while petitioner was ill in a distant city and was away from his office for a period of four months.

5. That case involved an architect, who employed an engineer, subdivided and improved inherited land and disposed of a large number of lots through considerable activity on the part of a real estate broker. The Fahs case supra involved a lawyer who actively subdivided, improved and developed a tract of land acquired by him as an investment. In each case we held that the Government was wrong in taxing the profits derived from the respective ventures as ordinary income. Different facets of the standard tests were applied, but it was clear in those cases as it is here that the property was not held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business but that, on the other hand, the taxpayer was pursuing legitimate means in liquidating a capital asset.

therefore set aside with direction to redetermine the taxes in conformity with this opinion.

Reversed.