**A. G. HOMANN, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Anna HOMANN, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**A. G. HOMANN, Respondent.**

**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Anna HOMANN, Respondent.**

No. 14737.

United States Court of Appeals
Ninth Circuit.

Jan. 27, 1956.

---

---

Harry Elsworth Foster, Olympia, Wash., for appellants.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, John J. Kelley, Jr., Marvin Weinstein, Sp. Assts. to Atty. Gen., for appellee.

Before DENMAN, Chief Judge, and LEMMON and CHAMBERS, Circuit Judges.

DENMAN, Chief Judge.

A. G. Homann and his wife Anna Homann, hereafter the Taxpayers, each seek a review of identical decisions of the Tax Court holding that income from the sale in 1946 of sixty-eight (68) houses located in Sunnyside, Washington was taxable as ordinary income rather than as capital gain.

The Commissioner seeks review of the Tax Court's decision that the basis of these houses did not have to be adjusted by an allowance for depreciation for the years in which they were rented, and that the income from the sale of furnaces and refrigerators removed from some of the houses was capital gain.

A. The Taxpayers' Petition.

The question here is whether the taxpayers have sustained their burden of proof [1] that they were primarily engaged in the business of holding for rental purposes the 68 houses sold in 1946, which the Tax Court found were held primarily for sale to customers in the ordinary course of business.[2]

---

1. Cohn v. Commissioner, 9 Cir., 226 F.2d 22. The Tax Court's finding will not be set aside unless it is "clearly erroneous." Rollingwood Corp. v. Commissioner, 9 Cir., 1951, 190 F.2d 263.

2. The sale of any asset receives the lower capital gains treatment unless it is "property held by the taxpayer primarily for sale to customers in the ordinary course of * * * trade or business * * *." 26 U.S.C. § 117(j) (1939 ed.).

In July of 1944, the taxpayer, A. G. Homann, started construction of eighty-five (85) houses in Sunnyside, Washington, for the use of war workers employed by the Hanford Engineering Works. He testified that his original intent was to rent the houses to the workers. He had never been in the rental business before that time. Early in the spring of 1945, sometime before the houses were completed, the Hanford employees were moved to Oak Ridge, Tennessee, and taxpayer was told there would be no Hanford employees available to occupy his houses. A radio campaign was conducted to advertise the houses as for rent.

One Miller handled taxpayers' financial transactions concerning the houses. He received a five per cent commission for collecting rents and a two and one-half per cent commission on the sale of houses. He always had authority to sell the houses if he found a buyer. Miller took a deposit on the sale of a house in September, 1944 although the house had not been completed.

All of the houses were rented in 1945 on a month to month basis with an oral agreement that any tenant desiring it could have had an arrangement whereby his rental payments would be credited to the purchase price of the house in which he was living. Several tenants took advantage of this opportunity. In 1945 taxpayers received $4,892.85 in income from rents and $10,306.43 in income from sales of the houses. In 1946 taxpayers received $20,050.98 in income from sales of houses but lost $1,034.25 on their rental business.

Federal Housing Authority restrictions, applicable to the houses in issue, through the latter part of 1945 allowed only up to twenty per cent of the housing authorized by it to be sold. The balance had to be rented. Sixteen of the houses, approximately twenty per cent, were sold in 1945. Sixty-eight of the houses, those here in issue, were sold in 1946 after removal of all F.H.A. restrictions on percentage of sales. One house was sold in 1947. No selling campaign was ever conducted since return-ing veterans of World War II were eager to buy homes.

The above evidence supports the Tax Court's finding that the houses were held primarily for sale to customers in the ordinary course of business. There was other testimony to the contrary, but the Tax Court could have not believed it. We affirm the Tax Court's decision regarding the income from these sales.

B. The Commissioner's Petition.

(1) The Tax Court's Refusal to Reduce the Basis of the Houses by the "Allowable" Depreciation.

The Commissioner contends that the Tax Court erred in not reducing the basis of the houses in an amount equal to the "allowable" depreciation. However, the Commissioner took the opposite position before the Tax Court. There the case was submitted on the briefs, and in his brief the Commissioner stated:

"The petitioner took no depreciation on the houses in the year 1945 or the year 1946. This, of course, is in full accord with respondent's theory of this case *since if the houses were held primarily for sale no depreciation could be taken.* The statutory notice of deficiency has thereby reduced the basis by the amount of the depreciation allowed or allowable and this was done merely by way of protecting the revenues since, if the petitioner is sustained in his argument that the houses were properly used in the trade or business, the depreciation should have been taken." [Emphasis added.]

We affirm the Tax Court's decision on the basis of our decision in MacLaughlin v. Hull, 9 Cir., 1937, 87 F.2d 641, 644 and those of the Fifth and First Circuits; Capella v. Zurich General Acc. Liability Ins. Co., 5 Cir., 1952, 194 F.2d 558, 560; Orenstein v. United States, 1 Cir., 1951, 191 F.2d 184, 193.

(2) The Treatment As Capital Gain of the Income From the Sale of Furnac-

es and Refrigerators From the Taxpayers' Buildings.

We think the court erred in so holding in view of the fact that the buildings were held for sale. It is clearly an incident to the holding for sale of all the buildings that their contents were held for sale and that the proceeds therefrom were ordinary income. The Tax Court is reversed in this regard.