John T. **KELIHER** and Mary Louise Keliher, His Wife, Plaintiffs,

v.

**Richard P. BROWNELL, District Director of Internal Revenue for the District of Scranton, Pennsylvania, Defendant.**

Civ. A. No. 6580.

United States District Court
M. D. Pennsylvania.

Jan. 20, 1961.

Furst, McCormick, Muir, Lynn & Reeder, Williamsport, Pa., for plaintiffs.

Daniel H. Jenkins, U. S. Atty., Scranton, Pa., Charles K. Rice, Asst. Atty. Gen., Paul T. O'Donoghue, James P. Garland, Jerome Fink, John D. Stobbs, Attys., Dept. of Justice, Washington, D. C., for defendant.

FOLLMER, District Judge.

This is a suit for refund of taxes. The case was tried to the Court without a jury. On consideration of the pleadings and the testimony of the witnesses, and upon the entire record herein, the Court makes and files the Findings of Fact and Conclusions of Law as follows:

Findings of Fact

1. Plaintiffs, husband and wife, reside at 830 Vallamont Drive, Williamsport, Pennsylvania.

2. Plaintiff, John T. Keliher, is a General Contractor whose business is devoted mainly to heavy excavation work, pipe line work, iron work and bridge work.

3. On February 26, 1951, by deed recorded in the Office of the Recorder of Deeds in and for Lycoming County, Pennsylvania, in Deed Book 376, at page 107, the plaintiffs acquired title from Cleo F. Pineau et ux. to a certain tract of land comprising approximately eleven acres in the Sixteenth Ward of the City of Williamsport, Pennsylvania.

4. John T. Keliher and Mary Louise Keliher purchased the above tract of land for the purpose of erecting a permanent residence for themselves and their family at some indefinite date in the future.

5. In February, 1951, plaintiffs owned a lot of land known as 1410 Walnut Street, Williamsport, Lycoming County, Pennsylvania, whereon they maintained their family residence until on or about January 15, 1954.

6. On January 15, 1954, plaintiffs sold their property known as 1410 Walnut Street, aforesaid.

7. On or about January 15, 1954, property known as 830 Vallamont Drive, Williamsport, Lycoming County, Penn-

sylvania, was placed on the real estate market due to the sudden death of its owner, Martha Furey.

8. On January 15, 1954, plaintiffs purchased the lot of land together with improvements known as 830 Vallamont Drive, Williamsport, Pennsylvania, and since about that date to the present time have maintained their family residence at said address.

9. From February 26, 1951, through December 31, 1956, plaintiffs sold three lots totalling 1.4 acres from the Pineau tract (Finding No. 3 supra) to the following purchasers for the following considerations:

| Name of Purchaser | Date | Deed Book | Page | Consideration |
|---|---|---|---|---|
| Joseph Snowiss, et ux | Jan. 13, 1956 | 414 | 300 | $4,850.00 |
| F. S. Van Valin, et ux | May 5, 1956 | 415 | 573 | 4,850.00 |
| Raymond N. Knaur | May 25, 1956 | 416 | 357 | 6,420.00. |

In addition thereto, plaintiffs sold a tract of land consisting of three lots in Eagles Mere, Pennsylvania.

10. Plaintiffs sold one lot in 1957, none in 1958, none in 1959, and twenty-five feet additional to 1956 vendee, F. S. Van Valin, adjoining the property originally sold to said vendee.

11. Plaintiffs filed their income tax return for the calendar year 1956 reporting tax of $10,627.45, and in said return reported the proceeds of the sale of said lots as long term capital gain.

12. Plaintiff, John T. Keliher, made the following improvements on the eleven acre tract of land purchased in February, 1951:

(a) 800'–900' of eight inch sewer line,
(b) 800'–900' of six inch cast iron water line,
(c) a paved road consisting of shale base and black top covering,

at a total cost of $3,399.25.

13. Plaintiffs, jointly or severally, never engaged in any form of solicitation for the sale of lots out of the eleven acres of land purchased by them in February 1951.

14. In 1955 plaintiffs subdivided the eleven acres of land purchased by them in February 1951, by executing a plot plan and having it approved by The Williamsport Planning Commission.

15. The Commissioner of Internal Revenue caused the aforesaid return of the plaintiffs for the calendar year 1956 to be examined and, as a result of such examination, determined, on or about July 11, 1958, that there was a deficiency of income tax due from the plaintiffs for the calendar year 1956 in the amount of $3,456.70 and assessed against the plaintiffs as additional income tax for the calendar year 1956 the said sum of $3,456.-70, making a total income tax assessment against the plaintiffs for said year of $14,084.15. In reaching the determination that there was a deficiency in income tax due from the plaintiffs for the year 1956, the Commissioner of Internal Revenue refused to accord capital gains treatment to the gains on the sales of said lots, but, on the contrary, treated said gains as ordinary income to the plaintiffs for the year in question.

16. The amount of said deficiency which resulted from the refusal of the Commissioner to accord capital gains treatment to the gains on the sale of said lots is $2,848.98.

17. Thereafter, prior to the 30th day of July, 1958, the defendant as District Director of Internal Revenue for the District of Scranton demanded of the plaintiffs the said sum of $3,456.70 as additional income tax for the year 1956, together with interest thereon. On July

31, 1958, the plaintiffs paid to the defendant, and the defendant collected from the plaintiffs as additional income tax for the year 1956, said sum of $3,456.70, plus interest upon such additional tax.

18. Four hundred dollars in capital gains reported by plaintiffs from the sale of the Eagles Mere property in 1956 was allowed by the Internal Revenue Service, and with respect to this transaction, the Internal Revenue Service did not assert plaintiffs were dealers in real estate.

19. Plaintiffs filed a claim for refund of income tax in the sum of $2,848.98 for the year 1956, which on or about February 21, 1959, was rejected and disallowed by the Commissioner of Internal Revenue and the plaintiffs were so advised.

20. The most efficient and profitable method of liquidating plaintiffs' investment in the eleven acres of land was by subdividing the area into lots and selling such lots for home sites.

21. Plaintiffs' intention to use said tract purchased by them in 1951 was changed some time in late 1953 or early 1954 because of the availability of other property in Williamsport for their family residence.

22. Plaintiffs sold lots out of the eleven acres purchased by them in February, 1951, as the most efficient and profitable way of liquidating their investment in said land.

23. No part of the sum of $2,848.98 claimed by plaintiffs as a refund has been returned to them by the Internal Revenue Service.

### Discussion

Defendant leans heavily on Kaltreider v. Commissioner of Internal Revenue, 3 Cir., 1958, 255 F.2d 833, and Pennroad Corp. v. Commissioner of Internal Revenue, 3 Cir., 1958, 261 F.2d 325. I am of the opinion that both Kaltreider and Pennroad are clearly distinguishable from the facts in the instant case. To paraphrase the Court in Pennroad, the sales of real estate in both Kaltreider and Pennroad were certainly sizeable, in comparison with which those in the instant case were just as certainly de minimis. In Kaltreider the Court said, inter alia (255 F.2d at page 838):

"As to the finding with respect to the nature of taxpayers' business, these principles are well-settled:

" 'There is no fixed formula or rule of thumb' for determining whether property is held primarily for sale to customers in the ordinary course of the taxpayer's business and 'Each case must, in the last analysis, rest upon its own facts.' No single factor or test is dispositive. Factors considered are: (1) the purpose for which the property was acquired; (2) the purpose for which it was held; (3) improvements, and their extent, made to the property by taxpayer; (4) frequency, number and continuity of sales; (5) the extent and substantiality of the transactions; (6) the nature and extent of taxpayer's business; (7) the extent of advertising to promote sales, or the lack of such advertising; and (8) listing of the property for sale directly or through brokers."

Plaintiffs' contention that the lots in question were held by them as an investment and their explanation of their ownership of them and why they decided to sell them all seem thoroughly plausible and logical to me. Plaintiff, John T. Keliher, devoted practically all of his time to his principal occupation of building roads, bridges, etc.[1]

The original acquisition of the Pineau tract for the purpose of securing a site for a home, the fact that a desirable property came on the market by reason of the death of its owner and its purchase by plaintiffs thus rendering unnecessary the use of the Pineau tract for that purpose, left plaintiffs holding a substantial capital asset. To assist in making it more readily marketable for liquidation, plaintiffs caused the land to be plotted

---

1. Camp v. Murray, 4 Cir., 1955, 226 F.2d 931; Ross v. Commissioner of Internal Revenue, 5 Cir., 1955, 227 F.2d 265.

and registered and spent a comparatively small amount of money in laying a water line and making sewer connections, roads and pavements. They never advertised any of the lots for sale, nor listed any of them for sale, either directly or through brokers. They never solicited buyers for the lots and never placed a "For Sale" sign on any of them. Neither of the plaintiffs have ever conducted a real estate office and neither of them have ever held a real estate broker's license.

In Pennroad, supra (261 F.2d 325, 329), the Court said, inter alia: (quoting with approval from Home Co., Inc. v. Commissioner of Internal Revenue, 10 Cir., 1954, 212 F.2d 637, 641)

" 'One may, of course, liquidate a capital asset. To do so it is necessary to sell. The sale may be conducted in the most advantageous manner to the seller and he will not lose the benefits of the capital gain provision of the statute, unless he enters the real estate business and carries on the sale in the manner in which such a business is ordinarily conducted. In that event, the liquidation constitutes a business and sale in the ordinary course of such a business and the preferred tax status is lost.' "

I conclude that taxpayers-plaintiffs were investors with relation to the real estate in question and were not dealers in real estate, that the sales of the lots in 1956 were made in process of liquidation, and accordingly, profits accruing to them were not taxable as ordinary income but as income derived from sale of capital assets.

Conclusions of Law

1. This Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1346(a).

2. Plaintiffs were not dealers in real estate with respect to their sales of three lots in 1956 out of the eleven acres of land they purchased in the City of Williamsport in February, 1951.

3. The gain on the consideration received by plaintiffs from sales of said three lots of land in 1956 was entitled to long term capital gain.

4. Plaintiffs are entitled to a judgment against the defendant in the sum of $2,848.98, together with interest thereon at six per cent from the date of payment of said deficiency assessment as provided by law.

Plaintiff to submit order after securing approval by defendant as to date of interest and total amount of judgment.