**W. E. STARKE and Cecilia G. Starke,**
**Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REV-**
**ENUE, Respondent.**

**No. 17337.**

United States Court of Appeals
Ninth Circuit.

Jan. 10, 1963.

Robert E. Austin and Wendell H. Davis, Los Angeles, Cal., William E. Starke, San Diego, Cal., for petitioners.

John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, and Carolyn R. Just, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS, MERRILL and BROWNING, Circuit Judges.

CHAMBERS, Circuit Judge.

W. E. Starke [1] is a San Diego lawyer who has been in private practice since 1937 when he left public employment. About 1931, while he was a redemption clerk in the county auditor's office, he began buying street bonds.[2] Many of the bonds went into default, and as a consequence, he acquired specific vacant San Diego lots. Also, he acquired other lot titles through tax deeds. There is a course of acquisition by the former method which extends through 1956 and by the latter method through 1953. (We think we would do Starke no injustice to say that he made his purchases of bonds expecting that many of the bonds would end up as lots in his hands.) Most acquisitions were for his own account, but he did have joint venturers with him on some of the lots.

The days that Starke must have been waiting for came in the war time years of 1941–1945 and again in 1953, 1954 and 1955. San Diego was experiencing an economic upturn which brought lot buyers to Starke's door. He had the lots. They bought, and he sold. There was considerable profit. Starke in 1953 and thereafter continued to treat his profits as capital gains, as he had done through

1. Cecilia Starke is the wife of W. E. Starke. The vacant lots which produced the income here at issue were California community property. The Starkes filed joint income tax returns.

2. It is obvious that the bonds were not general obligation bonds but were improvement bonds, each against an individual lot. The parties seem to be in agreement that the bonds created a lien on parity under California law with ordinary governmental real property taxes.

the preceding years. But the commissioner has taken the position for the years 1953, 1954 and 1955 that Starke was in the business of selling lots: ergo, he must treat the profit as ordinary income and cannot retain his own theory of capital gains.[3] On redetermination, the tax court has sustained the commissioner. Its decision, 35 T.C. 18,[4] is here for review. We agree with the taxpayer.

The facts appear to be either stipulated or not controverted. While there is often a large area in which the tax court can rule either way on a mass of facts undisputed, (depending on which it believes the more important) yet here we think the determination by the tax court was wrong—clearly erroneous.

Of course, a taxpayer may be in many active businesses all at the same time and all of his businesses subjected to ordinary income rates without capital gains treatment.

Our income taxes necessarily must be calculated for a period of time. The Congress has selected the period of one year for measurement and payment. We think if there were nothing before the court but taxpayer's sales in 1953, 1954 and 1955, we would agree with the commissioner and the tax court. But here both sides regarded as relevant Starke's whole history of his venture into San Diego lots from 1931 to 1956.

No one element is dispositive. But here there is no evidence of a campaign to sell, no advertising, no "holding out." Purchasers had to find Starke. Certainly prior to 1941–1945 and 1952–1955 one would be hard pressed to say Starke was in the business of selling lots. We do not think under all the circumstances that his decision to unload in the sellers market of 1953–1955, when buyers came to

his door, should charge Starke with an interlude of business. True, his profit is measured by the year, but "business or investment" should be measured by the course of the known years. It is in measuring the whole course here that we conclude he had investment. The active business shown for Starke was that of a practicing lawyer. We believe had the taxpayer been involved in the same number of stock purchases and sales at the same costs and selling prices on the same dates, no one would have questioned his right to capital gains. Likewise, we think if the bonds had remained bonds (and not transformed to lots) we would not have called Starke a "dealer." And we do not think he should be penalized because he did not "sit and bet upon the Board of Trade."

This circuit has a number of cases wherein this court has agreed with the commissioner that sales of varying volume were in the ordinary course of the business and not entitled to investment treatment. See Rollingwood Corp. v. Commissioner, 190 F.2d 263; Cohn v. Commissioner, 226 F.2d 22; Homann v. Commissioner, 230 F.2d 671; Pool v. Commissioner, 251 F.2d 233; Rubino v. Commissioner, 186 F.2d 304, and Stockton Harbor Industrial Company v. Commissioner, 216 F.2d 638.

It is not intended by this decision to impair the validity of any one of the foregoing decisions. One great factor (but not the only one) in our decision is the length of holding—an average of about ten years. And, there was the lack of "busy-ness."[5] We recognize that under certain circumstances one can hold for investment, then change his plan of operation and get into selling in the ordinary course of trade. And, when one does, capital gains are lost. We think

---

3. The taxpayer says he is entitled to the special treatment provided for capital gains under Section 117(a) (1) of the Internal Revenue Code of 1939 and Section 1221(1) of the Internal Revenue Code of 1954. The commissioner says the general section on ordinary income applies. This would be Section 22(a) of the Internal Revenue Code of 1939 which is

Section 61 of the Internal Revenue Code of 1954.

4. The tax court decision contains a rather full statement of the facts to which reference is readily made.

5. See Ross v. Commissioner, 5 Cir., 227 F. 2d 265.

that taxpayer's reliance here on Austin v. Commissioner of Internal Revenue, 9 Cir., 263 F.2d 460, is well placed.

As indicated above, the decision of the tax court is reversed.