**LOBELLO et al. v. DUNLAP.**

No. 14551.

United States Court of Appeals
Fifth Circuit.

Feb. 12, 1954.

Sam G. Winstead, Dallas, Tex., for appellants.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, and Melva M. Graney, Sp. Asst. Attys. Gen., Dudley J. Godfrey, Jr., Sp. Asst. to Atty. Gen., Washington, D. C., Heard L. Floore, U. S. Atty., Ft. Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge. and BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

The question presented is whether the district court erred in holding that gain realized by the taxpayers in 1946 from each of three sales of real estate is taxable as ordinary income rather than capital gain. The taxpayers contend that the properties sold were capital assets within the meaning of Section 117(a) (1) of the Internal Revenue Code, 26 U. S.C.A.,[1] and, accordingly, the gains realized from their sales were entitled to long-term capital gain treatment, the properties having been held in excess of six months.

The properties were located in Dallas County, Texas. Two of the sales were from a tract of land known as the Lover's Lane Tract and the other sale was of a tract known as the Ventura Tract. The facts were substantially stipulated and are not in dispute, the evidence consisting of a stipulation and the testimony of two of the taxpayers, largely in elaboration of the stipulated facts. The question was narrowed as to whether each of the pieces of property was excluded from "capital assets" as defined in Section 117(a) (1), as being "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". At the conclu-

---

1. "§ 117. Capital gains and losses
   "(a) Definitions. As used in this chapter—
   "(1) Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *."

sion of the testimony, the district court found against the taxpayers, rendering a brief oral opinion set forth in the margin.[2]

In the tax year under consideration, 1946, both Sam Lobello, Sr. and Sam Lobello, Jr. held real estate dealer's licenses. Sam Lobello, Sr. was a member of seven partnerships which invested in or dealt in real property, including the partnership of Lobello & Lobello through which the two sales from the Lover's Lane Tract were made and the partnership of Ventura & Lobello through which the Ventura Tract was sold. The other partner in Lobello & Lobello was Sam Lobello, Jr., and the two together with Ventura were the partners in Ventura & Lobello, each owning a one-third interest.

In 1944 Sam Lobello, Sr. acquired Lover's Lane Tract with a 540 foot frontage on Lover's Lane in the city of Dallas. In 1945 this property became an asset of Lobello & Lobello. During 1945 the partnership made three separate sales from this tract totaling 170 front feet; in 1946 the partnership made two more sales from the tract totaling 175 front feet; and in 1947 the partnership made one sale of 25 front feet. In 1948 the partnership completed improvements on the remaining 170 front feet, the improvements being retail stores

which have been continuously rented by the partnership since that time.

It is undisputed that at the time the property was acquired and at the time it became an asset of the partnership it was the intention of taxpayers to improve the entire property with retail stores to be held as rental property. The partnership was unable to carry out its original plans due to the restrictions against building which existed after World War II. In 1946 the partnership engaged an architect at an expense of $900.00 to prepare plans for improving the entire property then remaining in the partnership. The plans were submitted to contractors for bids, but the partnership was unable to get satisfactory bids due to the difficulties of building at that time.

Neither the Lover's Lane nor the Ventura Tracts were ever advertised for sale or listed for sale with any real estate agent or broker, nor did the taxpayers solicit any offers for sale of such property. The significance of those facts, however, is practically nullified, because they were consistent with the general policy maintained by Sam Lobello, Sr. for some twenty-five years. The majority of his sales were to brokers who came to him knowing that he had property for sale.

2. "I find the facts to be as stipulated by the parties, and also find that the Lovers Lane tract and the smaller tract of 70 acres, or, 69 acres, at the corner of Hillcrest, has some similarity, in that there was no advertising or listing, but it is rather difficult for the Court to conclude that Mr. Lobello was riding with a lady, just for fun, when he passed by this tract. His testimony is that when he passed, he told her that belonged to him.

"I think that is why he took her that way, I think that was purchased to sell.

"The sale made of the Lovers Lane property at the corner of Douglas and Lovers Lane seems to be somewhat different.

"I find the facts to be that he intended to build upon that tract at the time he purchased it, as a matter of fact, it is not built on yet, on the corner of Douglas and Lovers Lane, it is still vacant, but after he bought the 540 feet, he then disposed of it to different parties, to the extent of 70 per cent of it, they just talked him into selling it to them.

"The frequency of such sales, and the continuity of them makes it impossible to conclude that it was a capital asset. The fact that he finally got down where he built upon some of it which he still has, of course, and which is not involved in this case, as far as any revenue from it is concerned.

"I also find as a fact that as to this Ventura tract, which I have already mentioned, in which he and his son were partners with Mr. Ventura, that there is not any reason why he should not pay an income tax on that, as ordinary income.

"As a conclusion of law it must follow that judgment must go for the defendant in both of these cases."

The Lover's Lane Tract was in a rapidly expanding retail business area in Dallas. All of the sales, including the two sales in 1946, were made at the behest and solicitation of purchasers who came to the taxpayers and sought to acquire building sites in this area, and all such sales were made because of the difficulties which taxpayers had experienced in getting priority to improve the property; because the prices offered were favorable; and because taxpayers wanted to pay some bank loans.

In 1945 the taxpayers and their friend, Sam Ventura, found that the Ventura Tract consisting of 68.79 acres could be purchased for a reasonable price. They formed the partnership of Ventura & Lobello and purchased the tract. In 1946 they sold the tract to Kathryn Currin, a real estate agent, who accidentally saw the property when she and Sam Lobello, Sr. were riding in the area in which the property was located. There were no improvements upon the Ventura Tract at the time of purchase, and none were planned or made by the partnership. This was the only transaction of the partnership of Ventura & Lobello.

The expression "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" would appear to be as simple, explicit and easily understood as the customs of business would permit. It has, nevertheless, proved difficult of application, and has been the subject of repeated consideration by this Court.[3] The cases cited illustrate that no rigid rule or fixed formula will furnish an answer to the question. Among the helpful factors that will point the way are: continuity and frequency of sales and sales related activities as opposed to isolated transactions; the extent and substantiality of the transactions; the activity on the part of the taxpayer or those under his instructions in the form of advertising and improvements; the purpose for which the property was acquired; and all other considerations going to the ultimate question of whether at the time of sale the property was held by the taxpayer primarily for sale to customers and also for sale in the ordinary course of the taxpayer's trade or business. Since the question is one of ultimate fact,[4] the judgment of the district court should be affirmed unless found to be clearly erroneous.

■ The district court in its oral opinion found as facts that the taxpayers intended to build upon the Lover's Lane Tract at the time of the purchase, but later sold 70 per cent of that property to purchasers who talked them into the sales. The district court concluded that the Lover's Lane Tract was not a capital asset, assigning as its sole reason the frequency and continuity of the sales. The cases of Delsing v. United States, supra note 3, and Fahs v. Crawford, supra note 3, make it clear that frequency and continuity of sales by themselves do not conclusively cause assets to lose their character as capital assets, but may be offset by other factors. See, also, Victory Housing No. 2 v. Commissioner of Internal Revenue, 10 Cir., 205 F.2d 371, 373.

■ It is undisputed that the taxpayers acquired the Lover's Lane Tract for

3. King v. Commissioner of Internal Revenue, 5 Cir., 189 F.2d 122; Delsing v. United States, 5 Cir., 186 F.2d 59; Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781; White v. Commissioner of Internal Revenue, 5 Cir., 172 F.2d 629; Foran v. Commissioner of Internal Revenue, 5 Cir., 165 F.2d 705; Fahs v. Crawford, 5 Cir., 161 F.2d 315; Brown v. Commissioner of Internal Revenue, 5 Cir., 143 F.2d 468; McFaddin v. Commissioner of Internal Revenue, 5 Cir., 148 F.2d 570; United States v. Robinson, 5 Cir., 129 F.2d 297; Greene v. Commissioner of Internal Revenue, 5 Cir., 141 F.2d 645; Snell v. Commissioner of Internal Revenue, 5 Cir., 97 F.2d 891.

4. Dunlap v. Oldham Lumber Co., supra note 2; White v. Commissioner of Internal Revenue, supra note 2; King v. Commissioner of Internal Revenue, supra note 2.

the purpose of improving it for rental purposes. Their conduct throughout is consistent with and corroborative of that purpose and its continued retention. As to the Lover's Lane Tract, the taxpayers were investors with definite plans for building, which plans were delayed due to circumstances beyond their control. It seems clear to us that the Lover's Lane Tract was not held primarily for sale to customers in the ordinary course of trade or business, but constituted a capital asset within the meaning of Section 117(a)(1), and that the district court erred in holding to the contrary.

As to the Ventura Tract, we are unwilling to say that the judgment of the district court was erroneous, certainly not clearly erroneous. There was little or nothing in the record to indicate that the Ventura Tract was handled any differently than other property which the taxpayers admitted they held for sale. Insofar as the Ventura Tract is concerned, the judgment of the district court is, therefore, affirmed.

Affirmed in part and reversed in part and remanded.