**Robert THOMAS and Susan B. Thomas, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 16838.

United States Court of Appeals Fifth Circuit.

April 17, 1958.

E. Snow Martin (of Bryant, Martin &
Kibler), Lakeland, Fla., John J. Trenam,
Sherwin P. Simmons (of Fowler, White,

Gillen, Yancey & Humkey), Tampa, Fla., for appellant.

Charles K. Rice, Asst. Atty. Gen., Robert N. Anderson, John N. Stull, Karl Schmeidler, Lee A. Jackson, Attys., Dept. of Justice, Nelson P. Rose, Chief Counsel, Int. Rev. Serv., John M. Morawski, Spl. Atty., Int. Rev. Serv., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellants, Robert Thomas, sometimes here called the taxpayer, and his wife, Susan B. Thomas, filed a joint income tax return for 1950. We have for review a determination of their tax liability for that year made by the Tax Court. Thomas v. Commissioner, 28 T.C. 1. The taxpayer grew up in the phosphate producing area of Florida and, over the years, acquired a knowledge of phosphate, the manner of locating it, and an acquaintance with the phosphate prospectors of the vicinity. In 1946 he was released from active duty with the Navy and took over the operation of a ranch of nearly twelve thousand acres owned by his father. This ranch he purchased in 1948. In the latter part of 1947 the taxpayer became a registered real estate broker and had his name on the door of the office of his father, who was an active real estate broker, and had a desk in his father's office. He was not associated with his father in the real estate brokerage business and, except for the transactions here discussed, the taxpayer did not engage in the business of real estate broker.

In 1947 and 1948 the taxpayer was employed for a couple of phosphate prospecting jobs. While engaged in this work he was asked by F. L. Holland, who owned sixty acres of land at Homeland, Florida, to explore it for phosphate. This the taxpayer did. Holland took care of the taxpayer's out-of-pocket costs but paid him nothing for his services. Phos-

phate was found on the land. The area was too small to be of interest to a producer. Holland and the taxpayer discussed the putting together of enough land to interest one of the several phosphate mining companies in the area. They interested M. C. Peters who bought one eighty-acre tract. Holland, Peters and the taxpayer bought a tract of about fifty acres. Holland and the taxpayer purchased two parcels, one of twenty and the other of sixty acres. The taxpayer, individually, acquired a small parcel of eleven or twelve acres. On two tracts the taxpayer had an arrangement with the owners that their lands might be included in any sale that was made and if sold the taxpayer would receive a commission. These eight parcels of land formed a contiguous block and were known as the Homeland Assembly.

On his own behalf and for the others who had ownership interests in the Assembly, the taxpayer had conferences with representatives of International Minerals & Chemical Corporation looking to the sale of the properties. Options were given to International. It conducted prospecting operations. Its decision regarding the acquisition of the Assembly was delayed by the absence of some of its executives from the country. It elected to purchase and on March 3, 1950, the sale of the several tracts to International was concluded. The taxpayer and Holland negotiated for another tract adjacent to those in the Assembly. Because of a defective title this parcel was not acquired until August 10, 1950. It was contemplated that if this parcel was purchased by the taxpayer and another or others it would be sold to International. It was sold to International in 1951. In February, 1950, the taxpayer and others bought a piece of phosphate-bearing land about a mile from the Homeland Assembly. This land was sold in 1952. The taxpayer received a commission on the sale of two parcels of the Assembly in which he had no proprietary interest. In his income tax return for 1950 he reported these commissions as ordinary income. His portion of

the profits on the sale of the lands owned by him or in which he had an ownership interest was returned as long-term capital gains.

On his income tax returns the taxpayer listed his occupation in various ways. In 1948 his business was listed as "Ranch owner and Misc. Activities"; in 1949 it was listed as "Cattle Raising and Timber Growing (combined)"; in 1950 he described himself on the face of the return as "Real Estate Broker"; and on the schedule of profit from business he designated his business as "Real Estate Broker (Rancher)"; in 1951 this order was reversed and the face of the return showed him to be "Real Estate Broker—Rancher"; and on the schedule he referred to the business as "Registered Real Estate Broker"; and the same designations were followed in 1952.

The Commissioner of Internal Revenue concluded that the sale by the taxpayer of his interest in the Homeland Assembly was of "property held by the taxpayer primarily for sale to customers in the ordinary course of trade or business" and taxable as ordinary income under 26 U.S.C.A. (I.R.C.1939) § 117(a) (1). A deficiency was determined by the Commissioner. The Tax Court sustained the Commissioner and we have its decision before us for review

■■ We need not again set forth the usual applicable tests in resolving cases of this kind. See Smith v. Dunn, 5 Cir., 1955, 224 F.2d 353; Gamble v. Commissioner, 5 Cir., 1957, 242 F.2d 586. Nor need we labor the point that such cases are primarily fact cases. King v. Commissioner, 5 Cir., 1951, 189 F.2d 122, certiorari denied 342 U.S. 829, 72 S.Ct. 54, 96 L.Ed. 627; Lobello v. Dunlap, 5 Cir., 1954, 210 F.2d 465; Smith v. Dunn, 5 Cir., 1955, 224 F.2d 353; Consolidated Naval Stores Co. v. Fahs, 5 Cir., 1955, 227 F.2d 923. It is the total fact situation which is controlling rather than, in the usual case, specific factors. Consolidated Naval Stores Co. v. Fahs, supra; Smith v. Commissioner, 5 Cir., 1956, 232

F.2d 142. In the case before us there is no basic disagreement as to the evidentiary facts. In such situation, as has been said on several occasions, if the conclusion of the trial court as to the ultimate fact is merely, as here, a product of legal reasoning, that conclusion is subject to appellate review free from the restraint of the clearly erroneous rule. Galena Oaks Corp. v. Scofield, 5 Cir., 1954, 218 F.2d 217; Goldberg v. Commissioner, 5 Cir., 1955, 223 F.2d 709; Consolidated Naval Stores Co. v. Fahs, supra; Smith v. Commissioner, supra; Fahs v. Taylor, 5 Cir., 1956, 239 F.2d 224; Gamble v. Commissioner, supra.

■ The evidence justifies, perhaps requires, the conclusion that the taxpayer's interest in the Homeland Assembly was acquired for sale and was being held for sale at the time it was sold. While the purpose for which property is purchased is a factor for consideration, the purchase and holding of land for sale does not, per se, require a determination that the property was held in the ordinary course of the trade or business of the purchaser. Fahs v. Crawford, 5 Cir., 1947, 161 F.2d 315. As in many of the cases there are, in this case, factors casting weight upon each side of the question. Consolidated Naval Stores Co. v. Fahs, supra.

■■ It has been held that the statement in a tax return of a taxpayer's business as "real estate, ranching and investments" is an admission against interest in a capital gains case. White v. Commissioner, 5 Cir., 1949, 172 F.2d 629. Cf. Consolidated Naval Stores Co. v. Fahs, supra. Thomas did not show his occupation as Real Estate. He designated himself as a Real Estate Broker or as a Registered Real Estate Broker. "A broker is one whose occupation it is to bring parties together to bargain, or to bargain for them in matters of trade, commerce, or navigation. He is essentially a middleman or go-between." New Roads Oilmill & Mfg. Co. v. Kline, Wilson & Co., 5 Cir., 1907, 154 F. 296. The Flor-

ida statute under which the taxpayer was registered and licensed provides that "* * * nor shall the term broker or salesman be applied to a person who shall deal with property in which he is a part owner, unless said person shall receive a larger share of the proceeds or profits from the transaction than his proportional investment therein would otherwise justify * * *." Fla.Stat.Ann. § 475.01. The taxpayer, as a real estate broker, received commissions on the sales of the Snell and Gassett tracts and these were returned by him for taxation as ordinary income. Not infrequently are real estate brokers in the business of buying and selling for their own account, but one who acts as a broker with respect to lands of another does not, merely by reason of so doing, become engaged in the holding of similar and related property for sale in the ordinary course of trade or business. The procurement of a real estate broker's license, and the absence of such a license, have been considered and commented upon in resolving questions such as the one before us. White v. Commissioner, supra; Fahs v. Crawford, supra; Delsing v. United States, 5 Cir., 1951, 186 F.2d 59. In the entire pattern of events out of which this controversy arises the designation of the taxpayer on his income tax returns and his procurement of a real estate broker's license are of little significance in fixing the character of the holding of the property of the taxpayer sold by him.

■■ The relation of the taxpayer's income from real estate sales to his total income is stressed by the Commissioner as a factor. Gamble v. Commissioner, supra. The disparity is not controlling. The taxpayer's ranching business was an enterprise upon which the taxpayer had only recently embarked and it had not, so his testimony showed, as yet reached the stage of substantial earnings. Here the real estate profits which the Commissioner would compare with other income were present only in one year and were realized out of a single venture, so that the comparison of these profits with total income has little per-

suasive weight. Cf. Delsing v. United States, supra.

The conduct of the enterprise stretched over a three-year period. The taxpayer's time consumed was, as stated in the Tax Court's opinion, "relatively small when compared with the over-all lapse of time from the beginning of the venture until it was closed." There were few potential purchasers for the property and there was but a single sales transaction. The taxpayer acquired one parcel of land and an undivided interest in each of three others. This enterprise was not recurring but was the only operation of its kind in which the taxpayer had participated. Frequency and continuity of sales transactions have been regarded as important tests. If we regard the purchase transactions as the equivalent of sales for the purpose of applying the test, we would still be unable to avoid the conclusion that the taxpayer's transactions were not such as to constitute a business. See Dunlap v. Oldham Lumber Co., 5 Cir., 1950, 178 F.2d 781; Fahs v. Crawford, supra; Smith v. Dunn, supra.

The situation here, as we see it, is that the taxpayer entered upon a speculative investment. With some help, financial and otherwise, he put together the Assembly, and had about a sixth interest in it. It was a non-recurring venture. The Assembly, although composed of several parcels of land, could be regarded as a single entity in the sale. Robert Thomas was not engaged in an occupational undertaking which required the habitual devotion of time, attention or effort with substantial regularity. Fahs v. Crawford, supra; Dunlap v. Oldham Lumber Co., supra.

The determination of the Tax Court that the taxpayer's interest in the Homeland Assembly was property held primarily for sale to customers in the ordinary course of his trade or business was, we conclude, clearly erroneous. For the entry of a judgment in keeping with this conclusion, the judgment appealed from is

Reversed and remanded.