**ESTATE of Luke J. BARRIOS, deceased and Sallie F. Barrios, Surviving Wife, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17263.**

United States Court of Appeals
Fifth Circuit.

April 8, 1959.

---

**518**

Sidney W. Provensal, Jr., New Orleans, La., for petitioners.

John J. Pajak, Atty., Dept. of Justice, Washington, D. C., Grant W. Wiprud, John M. Morawski, Sp. Atty., I. R. S., Arch M. Cantrall, Chief Counsel, I. R. S., Washington, D. C., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Andrew F. Oehmann, Acting Asst. Atty. Gen., for respondent.

Before HUTCHESON, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

The question upon which this petition for review of the decision of the Tax Court will be decided is thus stated by the respondent Commissioner: "Wheth-er the Tax Court erred in holding that the real estate lots sold by taxpayer in 1951, 1952, and 1953 were held primarily for sale to customers in the ordinary course of taxpayers' trade or business within the meaning of Section 117(a) and (j) of the 1939 Code [26 U.S.C.A. § 117(a, j)], and accordingly that the profits were taxable as ordinary income rather than as capital gain."

The taxpayer [1] filed her tax returns treating her profits on land sales as long term capital gains; but the Commissioner determined that the proceeds from the sale of these lots constituted ordinary income and his determination was sustained by the Tax Court with two Judges dissenting (29 T.C. 378). The question presented to the Tax Court was one of law, the case being submitted upon stipulation and the testimony of taxpayer and two purchasers of lots from her.

The salient facts concerning the land may be thus summarized: prior to 1926 petitioner and her husband acquired substantially 165 acres of land situated near Houma, Louisiana. He was a veterinarian by profession and she had graduated from college after pursuing a course in agriculture. She had worked as a county demonstration agent. The land was acquired for farming purposes and for more than ten years it was so operated with success. In 1936, the Government completed the Intercoastal Canal, which created such drainage problems that it was not feasible to continue to farm, and its operation was abandoned.

Being thus dispossessed of the farming operation through no act of her own, she set about to dispose of the land in as advantageous a way as was open to her. In 1939, she began subdividing the lands and selling lots, and proceeded in a normal way to subdivide and place of record six separate plats of subdivisions, two such plats being filed in 1939, one in 1940, two in 1949, and two in 1950. Sales were made out of said sub-divisions

---

1. Sallie F. Burrios, widow of Luke J. Barrios, will be referred to as petitioner or taxpayer. Joint returns were filed by her and her husband, but the property was, during the tax years involved, owned by her and her husband died in March, 1953.

during the entire period from 1939 to 1953 and income was reported as capital gain with the Government's acquiescence through 1950.

In 1951, her husband became ill and unable to follow his profession and the illness resulted in his death in March, 1953. During these years there was a sharp advance in demand for building lots, and the number of sales increased over the average of the preceding years. The Commissioner determined and the majority of the Tax Court ruled, that, under legal principles established by the rulings of this Court, Mrs. Barrios was in the real estate business for the three years in question and that her profits on the sale of lots were taxable as ordinary income. The Judge of the Tax Court who had tried the case and had been afforded the best opportunity to evaluate the facts wrote a dissenting opinion joined in by another member of the Court. We think that the dissenting opinion correctly applies the law as established by this Court [2] to the facts in evidence. It quotes at length from cases decided by this Court and we think its reasoning is clearly supported by the holdings of those cases. The fact is that the law in this field has been so thoroughly and meticulously settled in this Circuit that it is hard to conceive how the reasoning and the conclusion of the dissenting opinion can be seriously questioned.

The cases decided by this Court developing the history and rationale of every phase and angle of the question presented are collected and analyzed in a series of recent decisions.[3] No good purpose will be served by a repetition of the various tests so carefully spelled out in these decisions. It will suffice to apply them to illustrative phases of the transactions before us which the majority opinion and the Commissioner's brief claim are ruled by these cases in favor of respondent.

Respondent first argues that petitioner's action in subdividing and platting the land adapting it for sale in lots including landscaping—meaning in most instances bulldozing the trees and bushes out of the way, filling in low places and the like[4]—and installation of streets, wa-

---

2. These excerpts from the dissenting opinion constitute, in our judgment, a correct evaluation of the facts and application of the law:

"I feel the facts show a gradual liquidation over a fifteen year period of property purchased for farm land, with increased sales during the last few years due to fortuitous circumstances rather than an active business operation.

"Petitioner, who had four years of study of agriculture in college, ran this sugar plantation up until the land was rendered worthless for farming in 1936. * * * In 1939 she began to plat and subdivide areas of the land and make certain improvements consisting of landscaping, installing water mains, streets and culverts. * * *

"The way in which the sales were achieved is revealing. No advertising was done. No real estate agents or other salesmen were employed, petitioner made no effort to show lots to prospective buyers. Purchasers were unsolicited. All the sales were made in petitioner's livingroom, quite informally, and with a minimum of time. There was no office set up in petitioner's home nor was there any real estate listing in the telephone directory. * * *

"[In the tax years] She made more sales because of fortuitous circumstances of a growing community and excellent location heretofore mentioned—not because of increased sales activity on her part. * * * Petitioner was a housewife, taking care of her husband, a veterinary doctor who was in his last illness during most of this period. If petitioner ever had any business it was that of farming her own farm. No doubt that was once the only source of her individual income."

3. Goldberg v. Commissioner of Internal Revenue, 5 Cir., 1955, 223 F.2d 709; Smith v. Dunn, 5 Cir., 1955, 224 F.2d 353; Ross v. Commissioner of Internal Revenue, 5 Cir., 1955, 227 F.2d 265; Consolidated Naval Stores Co. v. Fahs, 5 Cir., 1955, 227 F.2d 923; Smith v. Commissioner, 5 Cir., 1956, 232 F.2d 142; and Thomas v. Commissioner of Internal Revenue, 5 Cir., 1958, 254 F. 2d 233. And cf. Yunker v. Commissioner, 6 Cir., 1958, 256 F.2d 130.

4. "Well the first thing I had to do was to clear the land off, and I employed a man

**520**

ter mains and culverts are activities which are incompatible with the concept of liquidating a capital asset. The listed cases hold directly the contrary, and the facts here bring every facet of this case within those holdings. It is conceded that taxpayer bought the land to live on and to operate a farm, and that she abandoned this purpose only when she had to; it is further conceded that she never intended to go into the real estate business, and that she never improved the lots by erecting buildings and never bought or sold other parcels of land, although importuned so to do; [5] that she never engaged in any form of advertising, or employed a real estate agent, or solicited a prospective purchaser.

The idea of selling a large tract of land in lots embraces necessarily the construction of streets for access to them, the provision of drainage and the furnishing of access to such a necessity as water. It is hardly conceivable that taxpayer could have sold a lot without doing these things. To contend that reasonable expenditures and efforts, in such

necessary undertakings are not entitled to capital gains treatment is to reject entirely the established principle that a person holding lands under such circumstances may subdivide it for advantageous sale.

The Commissioner conceives the volume of the selling business to be such as to strip the taxpayer of the right to disavow that she was in the real estate business. The answer to that contention was furnished by Goldberg, who sold ninety houses in one year, and Consolidated Naval Stores, which in one year made over one hundred sales, aggregating nearly 200,000 acres of land. The taxpayer here during the three years involved closed eighty-eight sales—less than three a month—without leaving her home where her chief occupation was looking after her mortally sick husband.[6]

Being of the clear opinion that the Tax Court has incorrectly applied the law to the undisputed facts of this case, its judgment is reversed and judgment is entered here in favor of petitioners.

Reversed.

who operated the bulldozers and graders. He supervised everything. They cleared the land and then I employed a surveyor to divide it up in lots. * * * [I supervised the day laborers] only to this extent. I employed competent men that knew how to do that work and I simply told them what I wanted them to do, but they supervised it. They handled the job. * * *"

5. We do not overlook the fact that taxpayer did, in 1940, acquire, according to the intention and agreement made when the farm was purchased, an abandoned railroad right of way which ran through her property. And that, in 1951, she acquired a small triangular piece of property which the dissenting opinion describes as "almost a bisecting wedge between the two major portions of her platted property," which petitioner stated she had to acquire "to protect the rest

of my property. I had to buy it to keep somebody else from putting something objectionable right in the middle of my property." (Her lots were all sold under restrictive covenants as to character of use.)

The plat in evidence discloses that the protection and marketing of the lands she had bought for a farm required that these two minor additions be made to her original holdings.

6. A note in the Washington and Lee Law Review, Vol. XV, No. 2, p. 303, compares some of the cases from this circuit mentioned in footnote 3 with certain cases from other circuits, which latter the author calls "extreme." He also adverts to the fact that the cases in disharmony with those listed from this circuit are out of step also with the congressional purpose as expressed in § 1237 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1237.