Laurie W. TOMLINSON, District Director of Internal Revenue for the District of Florida, Appellant,

v.

Edward DWELLE, Jr., and Jacquelyn S. Dwelle, Appellees.

No. 19908.

United States Court of Appeals Fifth Circuit.

May 24, 1963.

---

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Donald C. Lehman, Asst. U. S. Atty., Jacksonville, Fla., Myron C. Baum, Michael I. Smith, Attys., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., for appellant.

Hugh F. Culverhouse, James E. Miller, Jacksonville, Fla., for appellees.

Before JONES, BROWN and LEWIS,* Circuit Judges.

LEWIS, Circuit Judge.

■ This is an appeal from a judgment of the District Court for the Southern District of Florida allowing the ap-

---

pellees-taxpayers [1] a refund of $1,875.96 on income taxes paid upon a deficiency assessment levied against their 1954 and 1955 joint returns. The single question presented is whether the trial court correctly determined that profits, realized by the taxpayer from the sale of certain real properties were taxable as capital gains rather than, as the Commissioner had earlier determined, as ordinary income derived from the sale of property held "primarily for sale to customers in the ordinary course of his trade or business * * *." Sec. 1231(b) (1) (B), Internal Revenue Code of 1954; 26 U.S. C.A. 1958 ed., § 1231. The evidentiary facts are not in dispute and since the trial court's judgment is premised upon an ultimate fact springing from undisputed evidentiary facts, a review of the substantive law encompasses a review of the ultimate fact, Riedel v. C. I. R., 5 Cir., 261 F.2d 371; Goldberg v. C. I. R., 5 Cir., 223 F.2d 709.

Taxpayer for over twenty-five years has been a licensed realtor in Jacksonville engaged generally in real estate brokerage and management activity for the account of others. He has operated as a sole proprietorship, maintaining an office and staff of clerical, sales and maintenance employees, has enjoyed continuing success and has obtained recognition in state and national real estate organizations. Property management was a prominent aspect of his business and during the years 1954 and 1955 he charged a fee of five per cent of gross rentals for his services in such regard.

In addition to rendering professional services as a realtor to others, taxpayer bought, operated and sold rental properties for his own account. Separate books were kept of these transactions and an "excess management commission" of ten per cent was paid by taxpayer to his realty firm for servicing operations which contemplated and included the selling of the properties. The amounts

---

* Of the Tenth Circuit, sitting by designation.

1. Appellees will hereinafter be termed in the singular with reference to the principal taxpayer, Edward Dwelle, Jr.

so paid were written off as expense in the years paid. The extent of taxpayer's personal transactions is indicated in the following breakdown:

| | No. of Purchases not including re-possessions | No. of Sales | No. of sales more than six months | No. of Sales reported as held less than six months |
|---|---|---|---|---|
| 1951 | 20 | 2 | 2 | 0 |
| 1952 | 26 | 10 | 7 | 3 |
| 1953 | 14 | 27 | 16 | 11 |
| 1954 | 11 | 13 | 12 | 1 |
| 1955 | 11 | 16 | 12 | 4 |
| 1956 | 11 | 6 | 6 | 0 |
| 1957 | 10 | 4 | 4 | 0 |
| 1958 | 10 | 2 | 2 | 0 |
| 1959 | 6 | 5 | 4 | 1 |
| 1960 | 2 | 6 | 6 | 0 |
| | 121 | 91 | 71 | 20 |

■ Taxpayer testified that he purchased each property for the purpose of investment and that sale of each property was made when in his opinion the investment became undesirable for his intended purpose. He indicated such generalities as deterioration of neighborhood, changing traffic patterns, zone changes, and original error in purchase as motivating sales. And although subjective intent honestly expressed is, of course, an important factor in determining the impact of tax statutes still reference to varying objective tests and standards, as this Court has often stated,[2] must be made to determine the ultimate compulsion of the statute. And finally the over-all pattern of the sales must be fitted against that of a dealer or that of an investor engaged in the liquidation of assets.

■ In the case at bar we can see very little in the activities of taxpayer that differs from that "ordinarily associated with real estate dealers." Gold-berg v. C. I. R., 5 Cir., 223 F.2d 709. Purchases and sales were frequent and continuous; sales were immediately anticipated upon purchase as indicated by the payment of excess management fees; sales, with few exceptions, were accomplished by newspaper advertising of the properties in the taxpayer's realty business ads and by the placing of "for sale" signs on the premises; sales were seldom made for cash and trades were solicited and obtained; financing was offered by and carried by taxpayer; income from sales supplied funds for additional purchases; and income from sales, at least during the taxable years of 1954 and 1955, exceeded that of rents. Although no single factor is conclusive, all are indicative, and when faced with the construction that must be accorded the capital gain provision of the Internal Revenue Act [3] we conclude that taxpayer was operating a second business subsidiary to his real estate brokerage business, the chief characteristic of

2. Lobello v. Dunlap, 210 F.2d 465, 468; Gamble v. C. I. R., 242 F.2d 586, 590; Barrios' Estate v. C. I. R., 265 F.2d 517.

3. Corn Products Refining Co. v. Comm., 350 U.S. 46, 52, 76 S.Ct. 20, 100 L.Ed. 29; Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 265, 78 S.Ct. 691, 2 L.Ed.2d 743.

which was to buy rental properties advantageously and permit the rents to sustain the investment until a sale could likewise redound to his financial advantage.

The judgment of the trial court is

Reversed.

JONES, Circuit Judge (dissenting).

If I had been the trier of the facts, I think I would have decided the issue in this case for the Government. But I do not think it has been shown that the district court applied improper standards or that the inferences which it drew were clearly erroneous. Therefore I dissent.