Louis J. Kirsch and Leitha C. Kirsch, et al. [1] v. Commissioner. Kirsch v. Commissioner
Docket Nos. 77482-77484.
United States Tax Court
T.C. Memo 1961-20; 1961 Tax Ct. Memo LEXIS 330; 20 T.C.M. (CCH) 89; T.C.M. (RIA) 61020; January 27, 1961
Alan M. Winsor, Esq., for the petitioners. Charles T. Shea, Esq., and Norton L. Armour, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined the following deficiencies in income tax and additions to tax for the year 1955: Additions
to Tax
Sec. 6654,
Docket No.
Deficiency
I.R.C. 1954
77482
$4,788.15
$93.74
77483
3,017.11
77484
2,810.32
The sole issue for decision is whether the petitioners properly reported the gain from the sale of a tract of land as capital gain or whether it should have been taxed as ordinary income. Findings of Fact Some of the facts are stipulated, are so found, and the stipulation of facts is included herein by this reference. Petitioners, Louis J. Kirsch and Leitha C. *331 Kirsch, are husband and wife with a residence in Waltham, Massachusetts. They filed a joint income tax return for the taxable year 1955 with the district director of internal revenue at Boston, Massachusetts. Petitioners, Walter R. Amesbury and Jennie T. Amesbury, are husband and wife with a residence in Weston, Massachusetts. They filed a joint income tax return for the taxable year 1955 with the district director of internal revenue at Boston, Massachusetts. Petitioners, Victor C. Harnish and Marjorie R. Harnish, are husband and wife with a residence in Weston, Massachusetts. They filed a joint income tax return for the taxable year 1955 with the district director of internal revenue at Boston, Massachusetts. Kirsch is a real estate broker with offices in Waltham, Massachusetts. He has been so engaged for more than ten years specializing in the sale of residential real estate. Amesbury, during 1955 and for a number of previous years, was the full time administrator of Waltham Hospital. He was also on the executive board of two Waltham banks. In 1940 he bought an old farm containing about 30 acres, located near his summer home in Duxbury "to run his dogs on. It was good rabbit *332 country". Several years later as the value of this land increased sharply, Amesbury subdivided the farm and sold off several lots over a period of several years. He still has two or three lots left. Harnish is an attorney and since 1931 has been a member of a law firm in Waltham, Massachusetts. During the five years preceding 1955, he devoted by far the greatest part of his time to the practice of law and the balance as treasurer of a non-profit corporation, as a layman assiting in other charitable work, and in managing his real estate and other investments. Amesbury has never been engaged, involved or interested with Kirsch or Harnish in any real estate venture other than that involved herein. Harnish and Kirsch had been engaged together and interested in two or three real estate trusts which bought, sold and rented residential properties. Sometime in 1952 or early 1953, Harnish and Kirsch learned that a tract of land containing about 15 acres in the Roberts section of Waltham, near Route 128, a circumferential highway around Boston, had been rezoned from residential to commercial use. This tract was principally a rocky hill with limited access to a public highway. The City *333 of Waltham held tax title to it. Adjacent was a tract of 3 1/2 acres of flat land in a commercial zone owned by White Pigment Corporation which had direct access to a public highway and a railroad siding. Harnish also learned this second tract was for sale. Harnish and Kirsch invited Amesbury to join them in forming a trust known as Sunnyside Park Trust, in which each was to take a one-third interest for the purpose of purchasing both parcels and developing them for commercial use. Their intention was to construct a building or buildings on the property for the purpose of leasing to an industrial concern. The trust instrument, which provided for a 10-year revocable trust, was executed on June 18, 1953 and recorded on July 2, 1953. Kirsch purchased the 15-acre tract from the City of Waltham and conveyed it to Sunnyside Trust on July 1, 1953. The contiguous 3-acre tract was purchased from the White Pigment Corporation as a result of negotiations conducted by Harnish and conveyed to the trust by deed dated October 12, 1954. The petitioners never improved the land, never posted it for sale, never advertised it for sale and never listed it with a broker for sale. The entire tract *334 was sold by the trust on April 29, 1955, to Aldo A. Minotti. Minotti was an architect and a close friend of Harnish and had previously performed architectural services for him. Minotti first learned that Harnish had an interest in the land in 1953 and the two paid a visit to look over the tract in that year. Harnish was seeking advice as to the best use for the land. In October 1954, Minotti arranged a meeting between Harnish, representatives of Compo Shoe Machinery Corporation and himself for the purpose of discussing the possible purchase of the land by Minotti and the construction of a building thereon to be leased to Compo. Sometime thereafter Minotti offered the Sunnyside Trust $50,000 for the tract for the aforesaid purpose. Nothing happened on this offer and later Minotti initiated further negotiations with Harnish which resulted in his purchasing the land for $65,000. The petitioners each realized a gain of $12,183.23 on the sale of the property in 1955. Each reported a gain on his income tax return from the transaction in the amount of $11,701.84, and treated the gain as long-term capital gain. The Commissioner determined that the gain constituted ordinary income. Opinion
*335 This case presents the familiar problem of whether the real estate involved in the transactions described in our findings of fact was "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" within the meaning of section 1221, Internal Revenue Code of 1954. If it was, then the Commissioner's determination is correct. The factors to be considered in reaching the proper answer to the question have been set out in many cases and extensive citations are not here necessary. The question is one of fact, Estate of Luke J. Barrios, 29 T.C. 378, revd. (C.A. 5) 265 F. 2d 517. This reversal and others dealing with this particular problem were not based on a difference in the principles to be applied, but on a difference in the application of the principles to the facts in each case. Austin v. Commissioner, (C.A. 9) 263 F. 2d 460, reversing a Memorandum Opinion of this Court. Among the factors to be considered are the following: the purpose or reason for the acquisition of the property and its disposal; the continuity of sales or related activity over a period of time; the *336 number, frequency and substantiality of sales and the extent to which the owners or their agents have engaged in developing and improving the property, soliciting and advertising, etc., W. T. Thrift, Sr., 15 T.C. 366. Here we are concerned with the acquisition and single sale of a tract of land. The acquisition was undertaken in two transactions, the first was the purchase of a tract lacking access to public highway or railroad, and the second was the purchase of a contiguous tract which did have such access. The intention of the purchasers was to hold the land for the purpose of building and leasing back for industrial uses. The three taxpayers were here joined together for the first time in such an undertaking. There was no sales activity, no improvement to the property, no continuity of activity with reference to the property and no indulgence in any of the activities by these taxpayers such as have been held by this Court and others to put taxpayers in the real estate business. The ultimate sale of the property culminated from the initiative of a third party who "turned up" a corporation interested in a building and lease back proposition. Rather than enter into *337 such a transaction themselves (and we point out that the record does not even show that such a deal was directly offered to them) the taxpayers sold the tract in a single transaction to the person who had "found" the other interested party. The only factor here which might tend to put the taxpayers in the business of buying and selling real estate in the ordinary course of business, is the fact that the land was sold. The record, however, establishes that petitioners purchased the tract for investment purposes and that before they carried out those purposes an offer to buy was presented to them at a price they could not afford to refuse. So they sold. As we see it, this is not enough to translate their original investment intent at the time of purchase into an intent to hold the land for sale in the ordinary course of business. So far as the record shows, this was the only venture in which the three taxpayers ever joined. It was a single transaction. It involved industrial real estate, a type of real estate in which the taxpayers neither singly nor jointly had had any other interest. We think the taxpayers properly characterized their gains as long-term capital gains, and so hold. *338 Because of concessions. Decision will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Walter R. Amesbury and Jennie T. Amesbury; Victor C. Harnish and Marjorie R. Harnish.↩